UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINTERACTIVE, LLC,<br><br>    Plaintiff/Counterdefendant,<br><br>    v.<br><br>OPTIREV, LLC,<br><br>    Defendant/Counterclaimant. | Case No. 15-cv-02903-SI<br><br>**ORDER GRANTING IN PART DEFENDANT/COUNTERCLAIMANT OPTIREV, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Re: Dkt. No. 45 |

On June 17, 2016, the Court held a hearing on defendant/counterclaimant OptiRev, LLC's motion to compel production of certain documents and for costs incurred. For the reasons set forth below, the motion is GRANTED in part.

**DISCUSSION**

On May 11, 2016, defendant/counterclaimant OptiRev, LLC filed a motion to compel production of certain documents and for costs incurred. As stated in its reply, OptiRev requests that VinterActive be required to obtain the complete record from the Copyright Office, including applications for copyright, deposited works, registrations, and relevant correspondence. Dkt. 47 at 4:27, 3:26-27.

In its complaint, VinterActive alleges, *inter alia,* claims for copyright infringement of website codes and content it produced for OptiRev. In its answer and counterclaim, OptiRev asserts numerous affirmative defenses and counterclaims which place the ownership and validity of the alleged copyrights at issue. OptiRev alleges, *inter alia*, that OptiRev and/or its clients are the authors and owners of the website content, that numerous versions of the websites and code

exist, and that the code is not copyrightable. OptiRev contends that the documents it seeks are necessary to ascertain the authenticity of VinterActive's ownership claims.

On November 9, 2015, OptiRev requested three broad categories of documents from VinterActive: (1) copies of "all copyright applications, registration forms, registration certificates . . . made with the United States Copyright Office that relate to the subject matter of this litigation," (2) copies of "all documents, from May 2015 through and including the date of production, that memorialize, refer, or pertain to any communication between [VinterActive] on one hand, and The United States Copyright Office on the other, which relate to the subject matter of this litigation," and (3) copies of "all copyright . . . deposits made with the United States Copyright Office that relate to the subject matter of this litigation." Dkt. 45 at 8-9.

OptiRev states that it repeatedly requested copies of the exact applications and deposited works from VinterActive, and that VinterActive says that these are in the possession of its former counsel. In lieu of the requested documents, VinterActive says it produced "the copyright applications and the files provided by VinterActive for uploading into the system," "copyright registrations that have been issued," "correspondence with the Copyright Office in regards to the transfer of files and the copyright registrations," and a "privilege log of the work product created for Early Neutral Evaluation." Dkt. 46 at 9:10-14. Specifically, VinterActive produced printouts from the Copyright Office website with the content of the applications and deposited works, a letter from VinterActive's counsel to the Copyright Office requesting transfer of access from former to current counsel, emails from the Copyright Office confirming registration of the codes,[1] and a privilege log for work product including correspondence with the Copyright Office in regards to file transfers and registrations. *See* Dkt. 45 at 11-12.

OptiRev asserts that VinterActive "may not have produced all of the applications (e.g., supplementary applications), the correct deposited works, and all correspondence with the

---

[1] VinterActive says that these "emails" were automated messages and that OptiRev's use of the messages violated the confidentiality of Early Neutral Evaluation. Dkt. 46 at 7:17-27. OptiRev apologized, but asserted that no work product protection applies. Dkt. 47 at 4 n.2.

Copyright Office." Dkt. 47 at 3:25-27. OptiRev believes that the printouts of the copyright applications are incomplete due to missing information including the category of copyright claimed under 17 U.S.C. § 102, the date of publication, the nature of the work, the nature of the authorship, and whether the work was derivative. OptiRev also notes discrepancies between the printed applications and online registrations. OptiRev submits that the content of the application for the Presidio Inn website does not match its online registration information. For example, the online version includes the "Type of Work" and "Authorship" / "Basis of Claim," both of which are absent from its respective printout. Dkt. 45 at 11:13-16. Additionally, the Copyright Office website lists "2013" as the "Date of Creation," whereas the printout lists this date as "2012." *Id.* at 11:16-17. VinterActive's papers do not explain these discrepancies, although at the hearing counsel stated that the discrepancies were due to an amendment to the application. OptiRev also asserts that VinterActive has not explained how it determined that the applications submitted to the Copyright Office by its former counsel were the ones "that were purportedly provided to him by [the client]." Dkt. 47 at 4:8-9.

VinterActive responds that "numerous failed attempts were made to obtain VinterActive's files from [former counsel]," but provides no further details. Dkt. 46-1 at ¶ 5; Dkt. 47 at 4:14. VinterActive states that it did not request copies of each document from the Copyright Office due to "significant expense,"[2] but VinterActive states that the documents it produced are the same as those filed by its former counsel with the Copyright Office. Dkt. 46-1 at ¶ 11; Dkt. 46 at 8:5-6. VinterActive says that the deposited materials it produced are "the same materials provided for the copyright applications, and these were the same materials that were uploaded in the electronic application." Dkt. 46 at 8:5-10.

Finally, OptiRev believes that VinterActive has not produced all correspondence with the Copyright Office. VinterActive claims that any further communications with the Copyright Office are privileged as work product because they were prepared for Early Neutral Evaluation. OptiRev

---

[2] VinterActive states that it would cost approximately $2,000-$3,000 for VinterActive to obtain the complete record from the Copyright Office, while OptiRev claims that obtaining the same documents would cost it approximately $16,000 due to "Copyright Office legal costs." Dkt. 46-1 at ¶ 11; Dkt. 47 at 5 n.1.

submits that VinterActive waived any privilege when it disclosed the information to a third party (the Copyright Office). Alternatively, OptiRev contends that VinterActive waived the privilege when it submitted responses past their initial deadline on December 14, 2015. While OptiRev granted a conditional extension to VinterActive until December 31 provided that it receive all responses and documents on that date, it claims the extension was void for lack of confirmation and because VinterActive failed to send the documents.

The scope of discovery extends to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The work product doctrine, a form of privileged matter, extends to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party." Fed. R. Civ. P. 26(b)(3)(A). However, documents prepared for litigation may be discovered if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Although courts mandate monetary sanctions when granting a motion to compel against the party whose "conduct necessitates the motion," courts can limit their imposition where "circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii).

The Court finds that exact copies of the applications, deposited works, registrations, and correspondence are relevant to both VinterActive's claims and OptiRev's counterclaims. *See* Fed. R. Civ. P. 26(b)(1). It appears that VinterActive has made good faith, though unsuccessful, efforts to obtain these documents from its former counsel. Because VinterActive's former counsel, who filed the applications at issue, has failed to respond to VinterActive's requests, combined with the fact that there are discrepancies between the documents produced by VinterActive and the registrations, the Court finds it appropriate to order VinterActive to obtain the complete file from the Copyright Office. Additionally, to the extent that any correspondence between VinterActive and the Copyright Office was prepared in anticipation of settlement, the Court finds that any protection offered by work product is overcome by necessity. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). VinterActive is ordered to obtain the files because, according to counsel, the cost will be considerably less for VinterActive to obtain them, than it would be for OptiRev to do so. Under

the circumstances, however, and because the complete file will assist both sides in achieving a fair resolution of this action, it is appropriate that the cost of obtaining the materials from the Copyright Office be split, 50/50, between the parties. The Court further finds that monetary sanctions are unjustified as VinterActive displayed good faith in its beliefs and supplementary responses. *See* Fed. R. Civ. P. 37(5)(A)(iii).

**CONCLUSION**

The Court GRANTS OptiRev's motion to compel production of the Copyright Office record and DENIES OptiRev's request for monetary sanctions. The Court orders VinterActive to obtain and produce the complete file, and orders the parties to split the cost of such production equally.

**IT IS SO ORDERED**.

Dated: June 17, 2016

SUSAN ILLSTON
United States District Judge